## ENGLER v. GENERAL ELECTRIC CO.

### No. 250.

Circuit Court of Appeals, Second Circuit.

Dec. 28, 1944.

Carl E. Ring, of Ring & Murray, all of New York City, for plaintiff-appellant.

Alexander C. Neave, of New York City, for defendant-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

## PER CURIAM.

Of course two poles were created every time one of the coils of the appellee's armature was energized and these poles were opposite in value as well as opposite each other in space across the armature. That was taken to be self evident. This change in pole values around the circle is what the appellee still argues is an infringing reversal of polarity in the armature and he insists that we were wrong in saying there was no reversal of polarity anywhere in the appellee's machine. While we still think it should instead be called, for want of a better term, intermittent polarity, we are not disposed to put decision upon any verbal distinction in this respect between the patented machine and that of the appellee.

As we have already said the accused machine has "only the successive cutting in and cutting out of the armature coils in the stator which enables the rotor of the appellee's motor to revolve, and merely in the sense that revolution of the rotor is essential to the operation of any electric motor, that does accomplish what the reversal of polarity in the field does for the patented machine." Thus the equivalency in function was recognized but we were unable to treat this as enough to come within the range of equivalents to which the patentee was entitled because, as we pointed out, what we called intermittent polarity was old in the art. We still are unable so to broaden the claim for the same reason, for whether the creation of poles of opposite value around the defendant's armature ought to be called a reversal of polarity or not it is nevertheless an old feature as to which the appellant could not, and did not, obtain any monopoly when his patent was granted. So he must be limited in his range of equivalents at least enough to exclude that.

Nor has the defendant any "means for rendering ineffective the electromotive force induced by said reversals." Any stray current in the defendant's motor is simply ignored. What the appellant calls his trigger circuit has no counterpart in the defendant's motor whether he is right in saying that the defendant's distributor plus the thyratrons which cooperate to cut the coils in and out should or should not be called a trigger circuit. Calling that cooperation one name or another does not change the fact that it does not provide

the means for rendering ineffective any electromotive force induced by any reversals.

As neither of these features to which the combination was tied in the claim allowed is to be found in the accused machine, the latter cannot be held to infringe without in effect rewriting the claim. That we have no right so to do cannot be disputed. We can enforce only the monopoly the patentee secured when his claims were allowed. If that was not as broad as it should have been his failure to succeed in this suit must be attributed to the failure to get years ago that to which he was entitled in the Patent Office and not to any denial of his rights at this time.

Petition denied.